UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN SMITH #786975,

    Plaintiff,                                     Hon. Hala Y Jarbou

v.                                                                     Case No. 1:22-cv-205

HEIDI DRISENGA, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendant Heidi Drisenga's Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 31.) The matter is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendant's motion be **DENIED**.

**I.    Background**

Plaintiff, who was incarcerated with the Michigan Department of Corrections (MDOC) at the time he filed his complaint in this action, sued Defendants Heidi Drisenga and Brent Simon pursuant to 42 U.S.C. § 1983 based on events that occurred at Bellamy Creek Correctional Facility (IBC). Plaintiff alleged that Defendants were deliberately indifferent to his serious medical need, in violation of the Eighth Amendment, by failing to treat an injury to his right knee. Plaintiff's claims against Defendant Simon were previously dismissed without prejudice for lack of exhaustion. (ECF Nos. 24 and 25.)

As to Defendant Drisenga, Plaintiff alleges that on December 17, 2021, while playing basketball on the housing unit court at IBC, he slipped on some ice and injured his right knee. (ECF No. 1 at PageID.3.) Although Corrections Officer Valdez informed healthcare that Plaintiff required medical attention, staff informed Valdez that they could not see Plaintiff that day because

1

they were short staffed. (*Id.*) On December 20, 2021, Plaintiff was pushed to healthcare in a wheelchair. He alleges that when he arrived, Defendant Drisenga denied him medical attention and sent him back to his housing unit. (*Id.*)

On December 21, 2021, Plaintiff filed a Step I grievance against Defendant Drisenga for denial of medical care. (ECF No. 32-3 at PageID.127.) The grievance, IBC-21-12-2826-12E1, was denied on January 6, 2022. (*Id.* at PageID.128.) On January 14, 2022, Plaintiff filed a Step II appeal. (*Id.* at PageID.126.) On February 11, 2022, respondent Patricia Lamb, RN, BSN, issued a Step II response recognizing that Plaintiff's request for medical treatment on December 21, 2021, met the criteria for urgent assessment and should have been handled as such, rather than being handled as a routine matter. The response indicated that the grievance had been resolved. (*Id.* at PageID.125.) Plaintiff did not appeal the response to Step III at that point. Instead, he filed his complaint in this action on March 9, 2022.

Later, Plaintiff completed the Step III appeal portion of the appeal form, stating that his grievance had not been resolved because he had been in pain for three months and still had not been seen by a doctor. He requested an MRI and proper medical care for his knee. (ECF No. 33-4 at PageID.147.) It appears that Plaintiff submitted the appeal form in September 2022, along with a hand-written document dated September 5, 2022, and captioned "Step III-Reason for Appeal." (ECF No. 32-2 at PageID.122–23.) In this document, Plaintiff set forth the history of his knee injury and his efforts to receive treatment. He related that he had asked P.A. Simon about an MRI, but Simon told him that the MDOC did not do them because they cost too much. (*Id.* at PageID.123.) Plaintiff also wrote:

> IBC Health Care Administrative haven't review[ed] or correct[ed] anything, My Step II is never resolved. This is inadequate medical care and Brent Simon is not performing h[is] duty. This grievance is also against any other person whose

> identity I don't know who is responsible for the lack of training and supervision, the inadequate policies.

(*Id.*)

On January 17, 2023, the MDOC issued a decision on the Step III appeal, stating, erroneously, that the rejection was upheld. (*Id.* at PageID.119.) On February 2, 2023, the MDOC issued a corrected Step III Grievance Response form, stating that the appeal was rejected because it was missing the Step I grievance and response and was thus untimely. (*Id.* at PageID.118.)

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that

3

the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court stated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is

4

believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

Defendant Drisenga contends that Plaintiff failed to fully exhaust his administrative remedies because he did not pursue any grievance pertaining to his claims against her through Step III before filing the instant lawsuit. (ECF No. 32 at PageID.111.) She asserts that the "resolved" status of the Step II appeal does not excuse compliance with the normal rule requiring a prisoner to purse a grievance through all three steps before filing suit, and that if Plaintiff disagreed with the resolution, he should have appealed to Step III. (*Id.* at PageID.111–12.) Defendant's point, as I understand it, is that Plaintiff's filing of his complaint within the period of time for filing a Step III appeal signals that he was dissatisfied with the Step II resolution, and thus should have filed a Step III appeal before initiating this action. Plaintiff responds that the grievance was resolved at Step II, meaning that the issue had been fully resolved and there was no need for him to go to Step

5

III. (ECF No. 33 at PageID.137.) While Plaintiff concedes that he filed a Step III appeal many months after the Step II response issued, stating that the matter was resolved, he posits that this appeal probably should have been filed as a new grievance because Plaintiff was complaining that he still had not seen a doctor. (*Id.*) Plaintiff thus contends that as he was not dissatisfied with the Step II response when he received it, he was not required to go to Step III before filing this action. (*Id* at PageID.137–38.) In reply, Defendant contends that Plaintiff's response—conceding that Plaintiff became dissatisfied several months after the Step II response due to the lack of treatment of his knee and sought to address the issue through a Step III appeal—shows that Plaintiff was dissatisfied with the resolution and should have proceeded to Step III. (ECF No. 34 at PageID.150–51.)

Defendant's argument in her opening brief—that Plaintiff was required to proceed to appeal to Step III before initiating this action—ignored numerous cases from this district and the Eastern District of Michigan concluding that a prisoner need not continue to pursue additional relief in the grievance process if the grievant is satisfied with the response at a particular point in the process. As explained in *Black v. Henley*, No. 1:16-cv-585, 2017 WL 1437881 (W.D. Mich. Mar. 27, 2017), *report and recommendation adopted*, 2017 WL 1426010 (W.D. Mich. Apr. 21, 2017):

> A plausible reading of these provisions [Policy Directive 03.02.130 ¶¶ DD and HH] is that a prisoner is not required to pursue a matter through all three steps of the grievance process if the matter is resolved to his satisfaction prior to Step III. Defendant has identified no MDOC Policy provision that obligates prisoners to pursue a grievance through all three steps if the matter is resolved in a manner satisfactory to the prisoner prior to Step III. Likewise, Defendant has presented no evidence challenging Plaintiff's assertions that the matter was resolved in his favor at Step I. Finally, Defendant has failed to identify for the Court any legal authority holding that under the circumstances described herein, where a grievance is resolved in the prisoner's favor at Step I and no further action taken, the prisoner has failed to properly exhaust the claim in question.

*Id.* at *3. Thus, "if a grievant is not dissatisfied with the resolution, the grievance is considered exhausted and there is no need to proceed with any further appeal." *Doe v. Anderson*, No. 15-13852, 2017 WL 4682291, at *2 (E.D. Mich. Oct. 18, 2017) (citing *Yowell v. Booker*, No. 13-10029, 2014 WL 1096398, at *6 (E.D. Mich. Mar. 19, 2014)); *see also Brown v. Klotz*, No. 19-11509, 2020 WL 6390500, at *4 (E.D. Mich. Aug. 17, 2020), *report and recommendation adopted*, 2020 WL 5525208 (E.D. Mich. Sept. 15, 2020) (stating that "where the prisoner is satisfied with the prison's response before reaching step II or III, the prisoner need not proceed to the next step"); *Manning v. Dolce*, No. 09-13840, 2010 WL 3515718, at *3 (E.D. Mich. July 12, 2010), *report and recommendation adopted*, 2010 WL 3515715 (E.D. Mich. Sept. 8, 2010) (finding exhaustion requirement satisfied where grievance was favorably resolved at Step I); *Grear v. Gelabert*, No. 1:07-CV-203, 2008 WL 474098, at *2 (W.D. Mich. Feb. 15, 2008) (no further appeal required where the grievance was resolved at Step I).

The Step II response found that Plaintiff's injury should have received an urgent assessment, noted that Plaintiff was scheduled for a follow-up appointment with the provider on February 21, 2022, and indicated that the grievance was "resolved." (ECF No. 32-2 at PageID.121.) There is no indication that Plaintiff could have obtained any further relief by filing a Step III appeal or that, at the time the Step II response was issued, Plaintiff was dissatisfied with the resolution. Defendant's only basis for arguing that Plaintiff was dissatisfied with the Step II resolution is the fact that he filed this action within the period for filing a Step III appeal. This argument is based on a false dichotomy: Plaintiff could not have been satisfied with the response because he filed this action. But satisfaction with a grievance response and filing a lawsuit are not inconsistent with one another. Assume, for example, that in response to a prisoner's complaint about a missing piece of food from his meal, a corrections offer tases him—a clear Eighth

7

Amendment violation. Further assume that in its Step I response, the respondent finds that the officer's action was improper and indicates that discipline was imposed. This favorable response does not negate the Eighth Amendment violation, nor would it require an appeal. Thus, Defendant fails to show that Plaintiff was dissatisfied with the Step II resolution at the time he filed this action.

The fact that Plaintiff became dissatisfied with the lack of treatment several months later provides no basis to conclude that he had not exhausted his claim at the time he filed his complaint. Defendant was involved with Plaintiff's treatment only in the few days following his injury. There was no need for Plaintiff to further exhaust his claim against her when he became dissatisfied with the lack of treatment several months later. As Plaintiff notes, instead of filing a Step III appeal, he probably should have filed a new grievance. Regardless, Defendant cites no authority for the proposition that a Plaintiff's subsequent dissatisfaction with a prior resolution after the time for an appeal expires abrogates his initial satisfaction.

Accordingly, Defendant fails to carry her summary judgment burden by presenting evidence showing that Plaintiff failed to exhaust his administrative remedies.

### IV.  Conclusion

For the foregoing reasons, I recommend that the Court **deny** Defendant Drisenga's motion for summary judgment. (ECF No. 31.)

Dated: May 3, 2023                                    /s/ Sally J. Berens
                                                                                                          SALLY J. BERENS
                                                                                                          U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).