UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN SMITH #786975,

        Plaintiff,                              Hon. Hala Y. Jarbou

v.                                                  Case No. 1:22-cv-205

HEIDI DRISENGA, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff Deshawn Smith, who is currently on parole with the Michigan Department of Corrections (MDOC), filed this action pursuant to 42 U.S.C. § 1983 alleging that medical personnel at Bellamy Creek Correctional Facility (IBC) violated his rights under the Eighth Amendment while he was incarcerated at IBC by failing to treat his injured right knee. Defendant Heidi Drisenga is the only remaining Defendant.

    Presently before me is Defendant Drisenga's Motion for Summary Judgment (ECF No. 46), which is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED**.

### I. Background

    On December 17, 2021, while playing basketball at IBC, Smith slipped on some ice and injured his right knee. (ECF No. 1 at PageID.3.) Some of the other prisoners who were present helped Smith return to his housing unit. When Smith arrived at his unit, he notified Sergeant Stump and Corrections Officer (CO) Valdez about his injury. Both of them said that they would call healthcare. (ECF No. 47-2 at PageID.210.) Smith was not called to healthcare that day. (*Id.*)

Smith claims that he submitted kites about his knee injury to healthcare on December 18 and 19, 2021, in which he indicated his need for care was "urgent," but he was not called out to go to healthcare those days. (*Id.* at PageID.211–12.) At approximately 3:30 p.m. on December 20, 2021, CO Valdez spoke with Defendant Drisenga, a Registered Nurse on duty in healthcare, about Smith's knee injury. Drisenga told CO Valdez to instruct Smith to kite healthcare and they would schedule an appointment for him. (ECF No. 47-7 at PageID.1357.) Later that day, CO Valdez provided Smith a wheelchair that was kept on hand in the housing unit. Around 7:00 or 8:00 p.m. that evening, another prisoner pushed Smith—who had not obtained a pass from housing staff—in the wheelchair to healthcare. (*Id.* at PageID.212–13.) Smith was wearing shorts under his state-issued blue pants at the time. (*Id.* at PageID.214.) When Smith arrived at healthcare, Drisenga was on duty and asked him if he had a pass, and Smith told her that he did not have one.[1] (*Id.* at PageID.213.) Drisenga called Smith's housing unit and spoke with CO Valdez about whether Smith was authorized to go to healthcare. After speaking with CO Valdez, Drisenga twice ordered Smith to return to his housing unit. When Smith refused to leave, Drisenga called custody staff to enforce her order. She also wrote Smith a misconduct ticket for disobeying a direct order.[2] (ECF No. 48 at PageID.1369, 1376.) The prisoner who had pushed Smith to healthcare returned and pushed him back to the housing unit. (ECF No. 47-2 at PageID.213.) Due to Drisenga's immediate concern regarding Smith's lack of a pass or staff authorization to go to healthcare, Smith had no opportunity to show Drisenga his injured knee. (*Id.* at PageID.214.)

---

[1] Pursuant to MDOC policy, a prisoner engaging in unescorted movement within a facility must obtain and carry a pass issued by appropriate staff. Prisoners are required to produce their passes upon request by staff. Mich. Dep't of Corr. Policy Directive 04.04.130 ¶¶ I–K (effective 09/27/2010).

[2] Smith was later found guilty on the misconduct ticket. (ECF No. 47-2 at PageID213–14.)

When Smith returned to his housing unit, he told CO Valdez and other officers about his untreated knee. The officers told Smith to send a kite to healthcare. The following day, Smith kited healthcare stating that he had "dislocated & tore something" in his right knee and could barely walk. He also said that he had been trying to get medical attention for the last three days. (*Id.* at PageID.215; ECF No. 47-4 at PageID.459, 460.) The same day, Ashley Boucher, R.N., responded to the kite, noting that healthcare had no record of Smith's alleged kites or staff calls to healthcare but that an appointment had been scheduled. Nurse Boucher advised Smith to contact healthcare if his condition changed or worsened. (*Id.*) On December 27, 2021, Kenneth McIntyre, R.N. examined Smith in his housing unit due to COVID-19 protocols. Nurse McIntyre assessed a visibly swollen right knee, antalgic gait, and tenderness. He also noted that Smith was in pain. Nurse McIntyre scheduled an appointment with the medical provider for January 3, 2022, and issued Smith crutches and an ice detail. (*Id.* at PageID.412–13, 459.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. Discussion

Smith's sole claim in this case is that Drisenga was deliberately indifferent to his serious medical need on December 20, 2021, when she ordered him to return to his housing unit without examining his injured right knee. His claim arises pursuant to the Eighth Amendment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must

"place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted). When a plaintiff claims that the care he received was inadequate, he must demonstrate that his doctor rendered grossly incompetent treatment. *Rhinehart*, 894 F.3d at 737. To meet this standard, the plaintiff must "present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so." *Phillips v. Tangilag*, 14 F.4th 524, 536 (6th Cir. 2021) (citing *Jones v. Muskegon Cnty.*, 625 F.3d 935, 945–46 (6th Cir. 2010)).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

"A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart*, 894 F.3d at 738 (citing *Farmer*, 511 U.S. at 844). So long as a doctor does not knowingly expose a prisoner to an excessive risk of serious harm and exercises reasonable medical judgment, the Sixth Circuit will defer to the doctor's judgment. *Id.* "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally

5

reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Moreover, where the plaintiff's claim amounts to disagreement with the medical provider's judgment or approach to medical treatment, the claim against the defendant-provider fails. *See White v. Corr. Med. Servs. Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004).

Drisenga argues that she is entitled to summary judgment because Smith fails to establish both the objective and subjective components of his claim. While I conclude that Smith has presented sufficient evidence to establish the objective component, I also conclude that Drisenga is entitled to summary judgment because Smith fails to present sufficient evidence to demonstrate that Drisenga had a sufficiently culpable state of mind.

### A. Objective Component

Regarding the objective component, as set forth above, a plaintiff can satisfy this requirement by presenting evidence that the need for medical treatment "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897. Smith has shown that he suffered an acute injury to his right knee. He described swelling to the size of a "big softball" and discoloration. (ECF No. 47-2 at PageID.211.) He was unable to ambulate without assistance and had severe pain. (*Id.*) CO Valdez apparently thought Smith's injury serious enough to warrant allowing him to use the unit wheelchair. (*Id.* at PageID.213.) When nurse McIntyre assessed Smith about a week later, he noted that his right knee was "visibly swollen" and that Smith had an antalgic gait. Nurse McIntyre determined that Smith's condition warranted an appointment with a medical provider. (ECF No. 47-4 at PageID.413.) *See Beedle v. Doane*, No. 05 CV 70430DT, 2005 WL 1345527, at *3 (E.D. Mich. May 12, 2005) (stating that "[g]iven the condition of plaintiff's knee, his inability to walk, his complaints of pain, and his restriction to a wheelchair, it would have been obvious to even a lay person that plaintiff was in

need of further medical attention") (citing *Johnson v. Stempler*, No. Civ. A 00-711, 2005 WL 119575, at *3 (E.D. Pa. Jan. 20, 2005) ("Even without the medical records confirming Plaintiff's knee injury and the necessity of surgery, a lay person could reasonably conclude from the swelling, pain, and limited motion that some manner of medical treatment was needed.")). This evidence suffices to establish the objective component of Smith's claim.

    **B.**    **Subjective Component**

Smith's evidence supporting the subjective component is rather sparse. First, he points to CO Valdez's call to healthcare on December 20, 2021, in which CO Valdez informed Drisenga about Smith's knee injury. (ECF No. 50 at PageID.1447.) CO Valdez testified that he did not look at Smith's knee. (*Id.*) Neither Drisenga nor CO Valdez recalls the call to healthcare. (ECF No. 47-6 at PageID.1324–25; ECF No. 47-7 at PageID.1344.) There is a logbook entry indicating that CO Valdez spoke with Drisenga about Smith's "injured knee." (*Id.* at PageID.1357.) Because neither participant remembers the call, let alone what was said, the logbook entry does not suffice to establish that Drisenga was subjectively aware of facts indicating that Smith's knee injury presented a serious medical need. *See Rhinehart*, 894 F.3d at 738 (noting that a plaintiff must present proof that the defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it") (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Next, Smith points to his encounter with Drisenga at healthcare. As noted above, Drisenga does not independently recall the encounter, and Smith testified that Drisenga was laser-focused on Smith's lack of a pass from a housing unit officer and/or lack of authorization to go to healthcare, so much so that he was unable to show her his knee or provide details about his injury. (ECF No. 47-2 at PageID.213–14.) Nonetheless, Smith contends that Drisenga should have

7

perceived the seriousness of his injury simply because another prisoner pushed him to healthcare in a wheelchair. (ECF No. 50 at PageID.1447–48.) Without more, however, Smith's arrival in a wheelchair does not demonstrate that Drisenga was subjectively aware of the extent of his injury. Had Drisenga examined Smith's knee, that knowledge, combined with Smith's wheelchair usage, could suffice to satisfy the subjective prong, but there is no evidence that she did (or that she had any information regarding the extent of the injury).

Last, Smith relies on testimony from nurse Patricia Lamb. Nurse Lamb did not see or treat Smith, was not involved in any aspect of his care, and has no personal knowledge of the facts surrounding Smith's claim. Instead, she was the respondent to Smith's Step II appeal of his grievance. (ECF No. 50-6 at PageID.1476, 1479; ECF No. 50-7.) She testified that her review focused on Smith's December 21, 2021 kite and healthcare's response to the kite. (ECF No. 50-6 at PageID.1477, 1478.) The response was authored by nurse Boucher, not Driesenga. (*Id.*) Nurse Lamb concluded that, pursuant to MDOC policy, nurse Boucher should have treated Smith's kite as an urgent request and arranged an assessment no later than one business day after receipt of the kite. (*Id.* at PageID.1477; ECF No. 50-7.)

Smith's counsel also questioned nurse Lamb about the housing log entry documenting CO Valdez's December 20, 2021 call to healthcare. She testified that the entry *could have* indicated that Smith's knee injury presented an urgent condition under the policy that would have required Drisenga to at least communicate with Smith about the injury. (ECF No. 50-6 at PageID.1478.) However, nurse Lamb also said that she had no idea what information CO Valdez might have conveyed to Drisenga concerning the degree of urgency the injury presented. (*Id.* at PageID.1480.)

8

Because nurse Lamb lacks any knowledge that is material to the alleged violation, her testimony cannot create a genuine issue of fact to defeat Drisenga's motion.[3]

In sum, whether considered separately or as a whole, Smith's evidence is insufficient to show that Drisenga acted with the requisite state of mind in denying him treatment for his knee injury.[4]

## IV.  Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendant Drisenga's motion for summary judgment (ECF No. 46) and dismiss Smith's complaint with prejudice.

Dated: February 15, 2024 　　　　　　　　　　　　　　　 /s/ Sally J. Berens
　　　　　　　　　　　　　　　　　　　　　　　　　　　　SALLY J. BERENS
　　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[3] Even if Drisenga failed to follow MDOC policy, a violation of a prison policy is not a basis for a Section 1983 claim. *See Smith v. Davids*, No. 1:19-cv-402, 2021 WL 4451951, at *3 (W.D. Mich. Sept. 29, 2021) (citing, among others, *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001).

[4] In light of my conclusion that Smith fails to show that Drisenga violated his Eighth Amendment rights, there is no need to address Drisenga's separate qualified immunity argument. *See Holsapple v. Cunningham*, 817 F. App'x 95, 107 (6th Cir. 2020) ("Having found no constitutional violation committed by Cunningham, the court need not address whether Cunningham possessed qualified immunity, nor whether Bay County is liable as a municipality under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).").