UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN SMITH,

    Plaintiff,

v.

HEIDI DRISENGA, et al.,

    Defendants.
_____/

Case No. 1:22-cv-205

Hon. Hala Y. Jarbou

## ORDER

Deshawn Smith brings this § 1983 action against Michigan Department of Corrections ("MDOC") nurse Heidi Drisenga, alleging that she violated his Eighth Amendment rights while he was a prisoner at Bellamy Creek Correctional Facility. Specifically, Smith alleges that Drisenga failed to treat his injured knee. On February 15, 2024, Magistrate Judge Sally J. Berens issued a report and recommendation ("R&R") recommending that the Court grant Drisenga's motion for summary judgment (ECF No. 46) and dismiss Smith's complaint with prejudice. (ECF No. 52.) Before the Court is Smith's objection to the R&R. For the reasons discussed herein, the Court will decline to adopt the magistrate judge's recommendation and will deny Drisenga's motion for summary judgment.

Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

# I. BACKGROUND

On December 17, 2021, Smith slipped on some ice while playing basketball and injured his right knee. (Smith Dep. 8-9, ECF No. 47-2.) He felt "a pop" and "instant pain[.]" (*Id.* at 9.) After some other prisoners helped Smith back to his housing unit, he informed Sergeant Stump and Corrections Officer ("CO") Valdez about his injury. (*Id.* at 10-11.) Stump and Valdez told Smith that they would call healthcare, but Smith was not called to healthcare that day. (*Id.*) At this point, his knee had discolored and had swollen to the size of a softball. (*Id.* at 15.)

Smith submitted health care kites on December 18 and 19, 2021. He marked these kites as urgent; again, he was not seen by healthcare. (*Id.*) Around 3:30 pm on December 20, 2021, CO Valdez spoke with Drisenga on the phone "about [Smith's] injured knee." (Call Log, ECF No. 50-3.) Drisenga told Valdez to tell Smith to kite healthcare and they would schedule an appointment for him. (*Id.*) Both Drisenga and Valdez claim that they do not remember the contents of that call. (Drisenga Dep. at 9-10, ECF No. 47-6; Valdez Dep. 6-7, ECF No. 47-7.)

Later on December 20, Smith secured a wheelchair from Valdez. (Smith Dep. at 21.) Valdez does not recall providing Smith the wheelchair, but avers that if a prisoner needed a wheelchair, he would have to obtain one from MDOC staff. (Valdez Dep. at 9.) Another inmate wheeled Smith to healthcare where he was met by Drisenga. (Smith Dep. at 22.) Smith did not have written permission to go to healthcare, though he appears to have interpreted Valdez's provision of the wheelchair as tacit permission. (*Id.* at 21.)

Once at healthcare, Drisenga identified Smith, called Valdez, and confirmed that Smith had not been officially authorized to go to healthcare. (Drisenga Dep. at 11.) Despite Smith's protestations that he was experiencing a medical emergency, Drisenga refused to examine him and twice ordered him to return to his cell. (Smith Dep. at 23.) She also issued Smith a misconduct ticket for disobeying a direct order for which he was later found guilty. (*Id.* at 24-25.) During this

2

encounter with Drisenga, Smith was wearing pants as well as shorts underneath his pants. (*Id.* at 25-26.)

A few weeks later, after further kites to healthcare, Smith received crutches and an ice pack from Nurse Kenneth McIntyre after he observed that Smith's knee was visibly swollen and that he was in pain. (*Id.* at 27.) Notably, McIntyre appears to have observed Smith in his housing unit, and Smith alleges that he just happened to be able to "flag [McIntyre] down" to receive care. In other words, this was not a scheduled appointment, despite multiple kites. (*Id.* at 34.) This apparently did not end Smith's troubles with his knee. It would be another two and a half months before Smith could put weight on his knee. (*Id.* at 35.) He would go on to receive an X-ray and an MRI, but medical records show he complained of pain in his right knee as late as May of 2023. (*Id.* at 35, 48.)

## II. ANALYSIS

The magistrate judge concluded that Smith has presented sufficient evidence to establish the objective component of his claim. There are no objections to this conclusion. Upon review, the Court agrees with the magistrate judge. It will adopt that portion of the R&R as the opinion of the Court.

A plaintiff succeeding on the objective component of an Eighth Amendment claim must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The magistrate judge concluded "Smith's evidence is insufficient to show that Drisenga acted with the requisite state of mind in denying him treatment for his knee injury." (R&R 9.)

3

Thus, she recommended Drisenga's summary judgment motion be granted. Smith objects, essentially arguing that the magistrate judge failed to make justifiable inferences in his favor.

The R&R focused on two pieces of evidence—CO Valdez's call to Drisenga in which he informed her of Smith's knee injury, and Smith's encounter with Drisenga at healthcare where she turned him away. Regarding the call, the magistrate judge found that "[b]ecause neither participant remembers the call, let alone what was said, the logbook entry does not suffice to establish that Drisenga was subjectively aware of facts indicating that Smith's knee injury presented a serious medical need." (R&R 7.) The Court disagrees. The call log is contemporaneous direct evidence that Valdez informed Drisenga of Smith's knee injury. Certainly, the details of that call are unknown to the Court, but a justifiable inference can be made that Valdez explained the extent of Smith's injury. Valdez and Drisenga testified that they do not remember the contents of that call and thus cannot provide further details, but it is inappropriate for the Court to assume their credibility. Smith has presented direct evidence from which a jury could infer that Drisenga was aware of his injuries. A defendant seeking summary judgment cannot defeat the direct evidence of the existence of an inculpatory call by saying that they do not remember the contents of that call.

With respect to the healthcare encounter, the magistrate judge noted, "Smith contends that Drisenga should have perceived the seriousness of his injury simply because another prisoner pushed him to healthcare in a wheelchair." (R&R 8.) The magistrate judge found that this was inconclusive without more. But Smith has presented more—the call log. He has also adduced evidence showing that a prisoner cannot obtain a wheelchair on a mere whim; a wheelchair must be provided by staff. Drisenga argues that this point is immaterial because "a person could fake an injury and sit in a wheelchair." (Def.'s Resp. to Pl.'s Objs. to R&R 5, ECF No. 54.) But

4

Valdez's testimony indicates otherwise. An MDOC member must provide a prisoner with a wheelchair. Thus, a jury could reasonably infer that Drisenga would have understood the significance of Smith arriving to healthcare in a wheelchair. That is particularly so when Drisenga was already on notice of his injury.

Taken together, Smith has presented sufficient evidence to survive Drisenga's summary judgment motion. He has presented direct evidence of her knowledge of his injury. He has also presented circumstantial evidence of her knowledge of the seriousness of his injury, given that she saw him in a wheelchair that could have only been provided by MDOC staff. There are justifiable inferences to be made that Drisenga was "aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed]" and that she "also dr[e]w the inference." *Farmer*, 511 U.S. at 837. Here, the magistrate judge reversed the summary judgment standard—she drew justifiable inferences in Drisenga's favor and discounted Smith's direct and circumstantial evidence.

The magistrate judge did not reach qualified immunity because she found that no constitutional violation occurred. The Court thus analyzes qualified immunity in the first instance.

To defeat a qualified immunity defense in this context, a plaintiff must establish two points. First, that the defendant has violated the plaintiff's Eighth Amendment rights and, second, that those rights were so "clearly established" that any officer would have recognized the violation. *See Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts may resolve these two "in any order," either by first holding the constitutional claim fails on the merits or by holding the defendant's conduct did not violate clearly established law. Even though qualified immunity is an affirmative defense, "a plaintiff bears the burden of overcoming qualified immunity." *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021).

5

As Smith points out, it was clearly established that Drisenga could not deliberately disregard his serious medical needs.  *See, e.g.*, *Danese v. Adman*, 875 F.2d 1239, 1244 (6th Cir. 1989) ("[i]f a prisoner asks for and needs medical care, it must be supplied").  Indeed, the Sixth Circuit recently noted, "It has been true since 1972 that 'where circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process.'"  *Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023) (quoting *Greene v. Crawford Cnty.*, 22 F.4th 593, 615 (6th Cir. 2022)).  Smith has carried his burden on the clearly established right prong of the qualified immunity analysis.

Here, the qualified immunity analysis is co-extensive with the underlying constitutional analysis.  Indeed, neither Smith nor Drisenga make a separate argument that, even if a constitutional violation of Smith's Eighth Amendment rights had occurred, those rights were or were not "clearly established."  Because the Court concludes that Smith has met his burden on the underlying constitutional violation to survive Drisenga's motion for summary judgment, it also concludes that he has met his burden to overcome qualified immunity.

Accordingly,

**IT IS ORDERED** that the report and recommendation ("R&R") of the magistrate judge (ECF No. 52) is **APPROVED** in part and **REJECTED** in part.  It is **APPROVED** and **ADOPTED** as the opinion of the Court insofar as it relates to the objective component of Plaintiff Smith's Eighth Amendment claim.  It is **REJECTED** insofar as it relates to the subjective component of Plaintiff Smith's Eighth Amendment claim.  The R&R is thus **REJECTED** as to its recommended outcome.

**IT IS FURTHER ORDERED** that Defendant Drisenga's motion for summary judgment (ECF No. 46) is **DENIED**.

Dated: May 30, 2024  /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE